**Eugene E. SULLIVAN, Plaintiff,**

**v.**

**BOYS CLUBS OF AMERICA, INC., Defendant.**

**No. 83 C 8343.**

United States District Court, N.D. Illinois, E.D.

Nov. 14, 1985.

---

George W. Hamman, Wayne H. Michaels, Marvin N. Benn, Dawn M. Cassie, Hamman Benn & Miller, Chicago, Ill., for plaintiff.

Roger Brice, Karen Ksander, Reuben & Proctor, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

DECKER, District Judge.

Plaintiff brought this action against his former employer, Boys' Clubs of America. Plaintiff claims defendant discharged him in violation of the Age Discrimination in Employment Act (ADEA). The case is before the court on defendant's motion for summary judgment.[1]

### I. *Factual Background*

Plaintiff, now sixty-two years old, began work for defendant in 1955. He was employed by defendant without interruption until his forced resignation in January of 1983. During his employment, plaintiff was promoted at least three times, finally attaining the position of Midwest Regional Director in 1971. In 1977, defendant reorganized its regional director positions. This reorganization was part of an overall shift in defendant's management focus, away from creating new clubs, to a new emphasis on serving existing clubs. As a result of the reorganization, defendant reduced the number of regional directors from ten to five. Plaintiff applied for a regional directorship, but the position was eventually given to a younger man, John Schroeder (Schroeder). As a result, plaintiff suffered demotion to Regional Service Director serving under Schroeder. As such, plaintiff acted as a liaison between defendant's national organization and its local clubs.

Plaintiff's job performance was formally evaluated through a "Planning and Performance Review" (performance review) completed by plaintiff and Schroeder and passed on to Thomas Garth (Garth), defendant's Director of Field Services.

In April of 1979, plaintiff and Schroeder completed a performance review. *See* Exhibit "4" to Defendant's Memorandum.

---

1. The court may not grant summary judgment unless, looking only to the parties' submissions of admissible evidence, it finds no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. *See International Administrators, Inc. v. Life Insurance Co. of North America,* 753 F.2d 1373, 1378 (7th Cir.1985).

The performance review assessed plaintiff's progress in meeting previously agreed upon goals. Plaintiff received generally satisfactory marks, with which he agreed, although he complained that the evaluation was based more on style than results. *Id.*

Plaintiff's performance review in 1980 was less impressive. *See* Exhibit "5" to Defendant's Memorandum. Therein, Schroeder commented, "This is less than a satisfactory performance review if items covered are weighted for areas critical to primary service to clubs responsibility, and accountability ... [Plaintiff] suggests and I concur that he needs to keep focused on his primary objectives for essential services ..." *Id.* Plaintiff refused to sign the performance review and, in an addendum thereto, disputed a particularly low rating for provision of essential services. *See* Exhibit "6" to Defendant's Memorandum. Nevertheless, plaintiff admitted that his goals were agreed upon and that he needed to focus on the primary objective of providing essential services. *Id.*

Plaintiff's performance review in August of 1981 showed some improvement in his provision of essential services. *See* Exhibit "8" to Defendant's Memorandum. Schroeder commented, "Skills and experience are adequate to accomplish objectives. Improved performance must come through anticipatory planning, assertiveness, confidence and focus on highest priority job segment ... essential services to clubs." Plaintiff disagreed, claimed he had met his objectives and complained the negative review was based on the performance of a few unrepresentative clubs. *Id.*

On August 9, 1982, Garth sent plaintiff a letter "to officially communicate [his] displeasure with [plaintiff's] performance [over the past two years]." Exhibit "9" to Defendant's Memorandum. In particular, Garth complained that plaintiff's visits to the local clubs were too infrequent. Garth placed plaintiff on probation and explained that "failure to meet all the performance indicators listed on your performance review to the satisfaction of your supervisor

[will] result in termination in December of [1982]." *Id.*

On September 9, 1982, Schroeder provided plaintiff with a memorandum setting forth performance targets for the balance of 1982 and a list of clubs on which plaintiff should concentrate his efforts. *See* Exhibit "10" to Defendant's Memorandum. Plaintiff responded to this memorandum, pointing out his specific achievements, responsibilities he had been assigned but which were not reviewed, and his visits to various clubs. Plaintiff also complained about deficiencies in the review process. *See* Exhibit "11" to Defendant's Memorandum. Schroeder responded to plaintiff's letter, refuting plaintiff's explanations, and reiterating his concern over plaintiff's job performance. *See* Exhibit "12" to Defendant's Memorandum. Garth also responded, and adopted Schroeder's refutation. *See* Exhibit "13" to Defendant's Memorandum.

Plaintiff's probationary work was evaluated by Schroeder in the performance review of January, 1983. *See* Exhibit "16" to Defendant's Memorandum. Plaintiff's ratings declined from previous reviews and Schroeder concluded, "This performance review indicates lack of acceptable performance based on [plaintiff's] work plans." *Id.* Plaintiff reasserted his constant complaint that the review was not objective and claimed he had achieved his performance objectives. *Id.*

In January of 1983, defendant informed plaintiff that he could resign voluntarily or else be terminated. Plaintiff resigned on January 19, 1983 citing "philosophical and managerial differences." Exhibit "18" to Defendant's Memorandum.

## II. *Discussion*

■ The ultimate burden on plaintiff in this case is to prove he was discharged because of his age. *La Montagne v. American Convenience Products, Inc.,* 750 F.2d 1405, 1409 (7th Cir.1984). That is, plaintiff must prove "not that age was the sole factor motivating the employer to discharge him, but that age was a 'determining factor,' in the sense that he would not

have been discharged 'but for' his employer's motive to discriminate against him because of his age." *Id.* (citing *Loeb v. Textron, Inc.*, 600 F.2d 1003, 1019 (1st Cir. 1979)). Plaintiff may satisfy this burden either by presenting direct evidence that age was a determining factor, or, as is more commonly done, by presenting indirect proof thereof. *Id.*

### 1. *Indirect Proof*

■ Under this theory, plaintiff must initially make a *prima facie* showing that he was: 1) in the protected age group; 2) qualified for the job; 3) terminated; and 4) replaced by a younger person. *Huhn v. Koehring*, 718 F.2d 239, 243 (7th Cir.1983). If plaintiff cannot satisfy this burden, summary judgment is appropriate. *Id.* at 245.

■ Defendant contends plaintiff's claim is amenable to summary judgment because plaintiff fails to show he was qualified for the position. Proof of qualification entails showing, by a preponderance of the evidence, that plaintiff "was performing at a level that met his employer's legitimate expectations." *Id.* at 243, 244. Plaintiff's conclusory argument to that effect is insufficient. He must provide facts in support of this bare contention.

■ From 1979 to 1983, plaintiff's performance was reviewed, based on mutually agreed upon goals and objectives. Plaintiff's superiors were increasingly dissatisfied with his performance and stated this openly in their reviews. Most assuredly, plaintiff took issue with many aspects of these evaluations. However, these disputes amounted to no more than bona fide differences of opinion and show only that plaintiff was satisfied with his performance. It is well settled that, "[p]laintiff does not raise a material issue of fact on the question of the quality of his work merely by challenging the judgment of his superiors." *Kephart v. Institute of Gas Technology*, 630 F.2d 1217, 1223 (7th Cir.

1980), *cert. denied*, 450 U.S. 959, 101 S.Ct. 1418, 67 L.Ed.2d 383 (1981). Furthermore, in response to plaintiff's complaints, his superiors provided explicit instructions and assistance to enable him to meet his performance goals. Yet, plaintiff still did not achieve satisfactory results.

■ In the face of these undisputed facts, plaintiff must raise a genuine issue of material fact to avoid summary judgment. To show he was qualified, plaintiff submits numerous testimonial letters from various current and former high ranking officials in the local boys' clubs he served. *See* Exhibit "0" to Plaintiff's Statement of Genuine Issues of Material Fact ("Plaintiff's Statement"). These testimonials show these officials were satisfied with plaintiff's work. However, they do not show that plaintiff met the legitimate expectations of his *employer*. Further, it is understandable that plaintiff's performance should satisfy the local clubs and not satisfy the national organization. Plaintiff's function was to implement policies vital to the national organization but which local clubs were hesitant to undertake. A key criticism of his performance was that he was not sufficiently aggressive in so doing. *See* Exhibits 4, 5, 8, and 16 to Defendant's Memorandum. Thus, it is understandable that local clubs would be satisfied with plaintiff's performance while his superiors were not. In sum, the testimonial letters provide no support for plaintiff's contention that he was meeting his employer's legitimate expectations.[2]

■ Finally, plaintiff claims his employer's expectations were unreasonable and therefore illegitimate. The Seventh Circuit has stated that an employer "may not make unreasonable expectations." *Huhn*, 718 F.2d at 244. In particular, plaintiff claims Joseph Cerbo (Cerbo), a younger counterpart, was held to lesser performance standards. However, all the

---

**2.** Plaintiff also points to his receipt of defendant's prestigous "Heart and Soul Award" for 1979, awarded in recognition of his fine service. Plaintiff's performance in 1979, however, is not at issue in this case. That plaintiff was performing well in 1979 is not probative of his subsequent performance.

evidence indicates that Cerbo and plaintiff were held to similar standards. Plaintiff, himself, so testified. *See* Plaintiff's Deposition at 328, 376–378; *see also* Cerbo's Affidavit appended as Exhibit "21" to Defendant's Reply Memorandum. Furthermore, plaintiff had input into and agreed to his performance objectives. These objectives varied from person to person based on the particular needs of the service areas. Thus, assuming *arguendo*, that plaintiff's goals were different from Cerbo's, this does not indicate that plaintiff's goals were illegitimate. In addition, plaintiff's major complaint regarding the evaluation procedure throughout was not that the goals were illegitimate, but that his performance was not fairly measured. *See e.g.*, Exhibit "14" to Defendant's Memorandum. The court is simply not persuaded that defendant set illegitimate goals for plaintiff. In conclusion, the undisputed facts indicate plaintiff was not satisfying his employer's legitimate expectations.

### 2. *Direct Proof*

Plaintiff points to three pieces of evidence which arguably could provide the requisite direct or circumstantial proof.[3] First, plaintiff submits so-called "statistical" evidence indicating the average age of defendant's regional directors and regional service directors declined after the 1977 reorganization and apparently concludes that this decline constitutes a pattern of discrimination into which his discharge fits. Second, he points to a memorandum concerning recruitment of his replacement, in which Schroeder indicates an interest in "young aggressive execs." Exhibit "N" to Plaintiff's Statement. Finally, plaintiff points to his April, 1979 performance review in which Schroeder commented, "[Plaintiff] needs to overcome the rigidity of the 'old' Field Service style in order to be more flexible." Exhibit "4" to Defendant's Memorandum.

Plaintiff's "statistical" evidence is unconvincing. On its face, this evidence shows that seven of ten regional directors were over forty years old in 1977 (the age of one director is not listed). In 1978, after the reorganization, three of the five regional directors were in their thirties (one was thirty-nine) and two were over fifty years old. Exhibit "G" to Plaintiff's Statement. This comparison is of little utility. As the Seventh Circuit said in *Parker v. Federal National Mortgage Association*, 741 F.2d 975, 980 (7th Cir.1984), "The problem with [such] statistical evidence is that it lacks sufficient breadth to be trustworthy. A small change in the underlying raw data would result in dramatic statistical fluctuations." (citations omitted). The utility of this comparison is further undercut by Garth's affidavit which states that four of the five people initially offered regional directorships, including that for which plaintiff applied, were in the protected group. Garth Affidavit appended as Exhibit "20" to Defendant's Reply Memorandum at ¶¶ 5, 7.

Finally, on its face, this comparison does not give rise to a reasonable inference of discriminatory intent. *See Matthews v. Allis-Chalmers Corp.*, 769 F.2d 1215, 1218 (7th Cir.1985) ("Statistics generally are not of significance in age discrimination cases 'unless the disparities in treatment are quite large.'") (quoting *Kephart*, 630 F.2d at 1224).

Plaintiff's conclusion that the decline in age of regional service directors after the reorganization proves discriminatory intent is also suspect. *See* Exhibit "E" to Plaintiff's Statement. Plaintiff's evidence does not indicate the age at which the pre-reorganization directors were promoted to that position. That these directors are now older than their more recently promoted counterparts is of little probative value. It may be that all these employees were promoted at a similar age.[4] In sum, plaintiff's "sta-

---

**3.** While plaintiff relies only on indirect proof, the court will consider his claim under a direct proof theory.

**4.** All of plaintiff's "statistics" are meaningless without other evidence showing the age and qualification of other applicants, other job offers, and the number of positions available.

tistics" are speculative, unreliable and wholly unconvincing.

■ Schroeder's statement criticizing plaintiff's " 'old' Field Service style" lends no support to plaintiff's cause. It cannot be doubted that Schroeder's reference was to a management style previously used by defendant and not to plaintiff's age. On its face, the statement refers, not to plaintiff's age, but to his performance.

■ Similarly, the isolated statement by Schroeder suggesting recruitment of "young aggressive execs" cannot save plaintiff. The termination decision was made by Garth, not Schroeder. Garth Affidavit at ¶ 9. Thus, the relevant inquiry is into Garth's motivation. Schroeder's motives are not probative of this. It is unreasonable to infer from Schroeder's post-termination statement that Garth wanted to replace plaintiff with a younger person, still less that Garth discharged plaintiff because of his age. In *La Montagne*, the Seventh Circuit affirmed a judgment n.o.v. even though, *prior* to plaintiff's termination, defendant's President, who made the termination decision, was told by his Senior Vice President, not to fire plaintiff until they could find a younger replacement. The court held the chain of inferences from the Senior Vice President's statement to the President's motivation was too tenuous for a reasonable jury to adopt, even though plaintiff's job was eventually offered to a younger man. 750 F.2d at 1412 (citing with approval *Simmons v. McGuffey Nursing Home, Inc.*, 619 F.2d 369, 371 (5th Cir.1980) ("That a member of the Board wanted a younger man as [plaintiff's] *replacement* does not mean that he

was *terminated* because of his age.") (emphasis in original)). *See also Parker*, 741 F.2d 975, 980 (7th Cir.1984) (discussing the effect of a similar off-hand comment, the court stated, "The district court is not required to evaluate every *conceivable* inference which can be drawn, ... but only reasonable ones. If [the statement was] the only ... evidence produced at trial, [defendant] could successfully move for a directed verdict."); *Ortiz v. Ciba-Geigy Corp.*, 87 F.R.D. 723, 725 (N.D.Ill.1980) (where there is no connection between an alleged discriminatory statement by an employee and the claimed bias, summary judgment is appropriate.)[5]

■ Summary judgment in a discrimination case must be approached cautiously. *Huhn*, 718 F.2d at 242. However, plaintiff's submissions must "give rise to a *reasonable* inference of discriminatory motive." *Parker*, 741 F.2d at 976 (emphasis supplied). Plaintiff has not met this burden. The court finds no genuine issue of material fact in dispute and concludes, on the basis of the undisputed facts, that plaintiff has not made a *prima facie* showing of age discrimination.[6]

### III. *Conclusion*

For the foregoing reasons, the court grants defendant's motion for summary judgment and dismisses plaintiff's complaint.

---

**5.** Assuming, *arguendo,* this statement could give rise to a reasonable inference of discriminatory motive, it cannot possibly prove that age was a *determining* factor in plaintiff's discharge. In a factually similar case, this court has stated, "If [plaintiff] would have been fired anyway because of his poor performance, he has not shown that 'but for' his age he would have been fired, and he loses." *Cebula v. General Electric Co.*, 614 F.Supp. 260, 267 (N.D.Ill.1985). The overwhelming evidence shows that plaintiff performed inadequately and that his employer showed patience and tolerance with

his inadequacy for a number of years until it finally concluded that plaintiff was not up to the job. Furthermore, in his deposition, plaintiff admits he has no evidence that age was a factor in his discharge. Plaintiff's Deposition at 361, 399–400. Plaintiff states that he chose age as a reason for his termination merely because he could not think of another reason. Plaintiff's Deposition at 361.

**6.** The court need not address defendant's other arguments.