Robert H. PALUCKI, Plaintiff,

v.

SEARS, ROEBUCK & COMPANY, Defendant.

No. 84 C 9818.

United States District Court, N.D. Illinois, E.D.

June 1, 1988.

L. Steven Platt, Hugh B. Arnold, Arnold & Kadjan, Chicago, Ill., for plaintiff.

John F. McClure, Michael A. Stiegel, Neil P. Stern, Arnstein, Gluck Lehr & Milligan, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

PARSONS, District Judge.

In November of 1982 Robert Palucki, ("plaintiff") age 41, was discharged from his employment at the Sears department store located in Park Forest, Illinois. Defendant Sears maintains that the plaintiff's termination was compelled by his consistently poor performance as division manager of the jewelry, cosmetics, and shoe division of the store. In response to Sears' action, Palucki brought this suit against his former employer charging that his termination was based upon age, and that it violated the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. The matter is before the court at this time on the defendant Sears' motion for summary judgment. After reviewing the evidence, and in particular the deposition testimony of the plaintiff and one of his former co-workers, I have concluded that the defendant's motion for summary judgment must be granted.

A summary judgment motion requires the court to conclude whether there remains any genuine issue of material fact that cannot be resolved in favor of the movant with what evidence there is before the court, and that the case need not be submitted further to a trier of fact in a

trial. Fed.R.Civ.Pro. 56(c). Summary judgment is not appropriate "... if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 242, 106 S.Ct. 2505, 2507, 91 L.Ed.2d 202, 208 (1986). In its most basic formulation Rule 56 requires summary judgment if the evidence before the court "is so one-sided that one party must prevail as a matter of law." *Liberty Lobby, Inc.*, 477 U.S. at 243, 106 S.Ct. at 2507, 91 L.Ed.2d at 208.

Paulucki was initially hired by Sears in 1958. Between 1966 and 1981, he served as a division manager over several department units at the Park Forest store. Included among these divisions were housewares, furniture, and home appliances. And as division manager of these units he had been required to perform basic managerial functions such as supervising employees, buying merchandise, promoting sales, and ensuring effective customer service.

In an effort to maximize retail sales and overall efficiency, Sears reorganized many of its departments and delegated greater responsibility than ever before to some of its former division managers. In following through with this newly founded policy here in the Chicago area, the jewelry and cosmetic divisions in the Park Forest store were consolidated with the shoe division. This happened similarly in several other outlets. Relying on Palucki's 15 years of experience and on the skills he had acquired as a division manager, Sears assigned him in November of 1981 as the division manager of this consolidated unit. This assignment was approved by Palucki's immediate supervisor, the Park Forest store manager, Russell Arnold. Arnold, at the same time he gave his approval, was aware that Palucki, despite his prior history of satisfactory work, had from time to time demonstrated certain inabilities in managing and communicating with the employees under his supervision. Nonetheless, Arnold believed that Palucki's experience in certain of the divisions of Sears, many of which were being newly formed at the time of the assignments, would serve Palucki well under the new arrangement.

As time progressed, however, it became clear to Arnold that Palucki's job performance in the new assignment was falling woefully below his, Arnold's expectations. Despite Palucki's many years of experience in merchandising and supervising employees, the newly consolidated division seemed to encounter an endless number of problems. These problems related principally to Palucki's repeated failure to adhere to Sears' newly instituted programs and policies. The record shows that during Palucki's one year tenure with this new consolidated division responsibility there were repeated several serious and recurring difficulties which went unresolved.

The record before the court points to numerous incidents of improper management on the part of Palucki. As division manager, he failed repeatedly to properly schedule the hours of the employees in his division in order that he might efficiently utilize them fully and at the same time stay within Sears' proscribed budgetary program. Records often had to be redone by supervisory personnel because they had turned out to be incorrect or incomplete. Palucki failed to implement the new market plans by not displaying the proper sales merchandise, or by failing to provide the right floor plan for enhancing sales. Additionally, Palucki showed increasing inability to complete his inventories and finish his case reports. His persistence in not promptly updating the requisite inventory cards became a source of great irritation to his superiors in the company. Palucki's inability to follow company security procedures, especially in the jewelry department, is well documented in the record before me. Despite Palucki's familiarity with company security procedures a number of other improprieties resulted. Under Palucki's supervision, jewelry was allowed to remain in unsecured areas without proper documentation; shipments were not picked up in a timely manner; and inventory cards were not attended to. These problems were regularly brought to Palucki's attention, yet, nevertheless, they continued.

Finally, Palucki proved to be incapable of training and supervising the workers under him. Even though he was continually warned, both verbally and in writing, that he should train his employees so that they could operate efficiently in more than one area, he failed to follow through in these matters. His poor performance resulted in declining sales and in a strained relationship between himself and the workers under him.

Throughout Palucki's stay under the new consolidated division programs, Sears made an ongoing effort to get him to be aware of his difficulties, hopeful that he could remedy them. In addition to repeated verbal warnings the company informed Palucki in writing on a number of occasions that his work must improve. Early in April of 1981, Palucki on one occasion was given a written deficiency interview outlining his failure to display merchandise particularly selected by Sears. In February of 1982, after he had been in his new assignment five months, Palucki was written up in a memorandum by his operating manager because of a security breakdown that occurred in the jewelry department. Then in April of 1982, Palucki received his second deficienty interview. This time the interview was again with Arnold. It regarded Palucki's inability to train employees and his failure to improve his own basic managerial functions. One month later, in May of 1982, there was a third deficiency interview with Arnold. Again this interview was memorialized in a written memorandum. It related to Palucki's failure in merchandising, his poor report preparation and his neglect to instruct the employees under him. Then in July of 1982 Palucki was written up by the company's security manager. This was for the problems in the jewelry area. A security audit that was conducted the next month, August of 1982, confirmed that the security problems still existed. In addition it included the problem of incomplete inventory cards and the problem of unsecured return items that were left lying around idle. Finally in September of 1982, Palucki was given what turned out to be his last deficiency interview. In it he was specifically informed that if his overall performance did not improve the company would be forced to discharge him. In due course of time, and the supervisory record showed that no noticeable improvement on the part of Palucki had taken place. The company, acting on the approval of Arnold and Palucki's other superiors, terminated him for his "continuing substandard performance."

■ Summary judgment is appropriate only where there remain no genuine issues of material fact to be resolved. As the Supreme Court noted in the *Liberty Lobby, Inc.*, case, supra,

The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

In this case as in other like it the burden shifts to the discharged employee to come back with evidence putting at issue the evidence of the defendant. Plaintiff here failed to present any concrete evidence whatsoever to create a disagreement over the material facts established by the defendant in this age discrimination case. The defendant's case of a legitimate non-discriminatory reason for his discharge has been layed out in volumes of corroborated material that have gone unchallenged by the plaintiff. As earlier stated, the question again returns to the court. It must be answered again. Has Palucki stirred up any question concerning the reasons Sears gave for his discharge. Here again the answer is no. The facts presented by Palucki are insufficient for a finding that he has even made out his prima facie showing of age discrimination.

■ A prima facie showing under the *McDonnell Douglas* standard requires plaintiff to establish that (1) he belongs to the age protected class, (2) he was qualified for his position, (3) he was terminated, and (4) he was replaced by a younger person. *Huhn v. Koehring Co.*, 718 F.2d 239, 243 (7th Cir.1983). Even in this testing by *McDonnell Douglas*, plaintiff failed to meet the demands of the prima facie case.

Plaintiff, of course, urges that he was clearly "qualified" for the position and performed it at a level that should have met Sears' legitimate expectations. But these are self serving assertions insufficient alone to satisfy the elements required under *McDonnell Douglas. Huhn* at 243. The ultimate burden was upon Palucki considering the case as a whole, to convince the court from objective evidence that he was performing as would have been a person qualified for his position. His own evaluations didn't answer the question. As one authority would describe it, if Palucki was not doing what Sears wanted of him, he cannot nevertheless be considered to have been performing his job. *See Kephart v. Institute of Gas Technology,* 630 F.2d 1217 (7th Cir.1980).

The function of this court is not to question the wisdom of Sears' business operations nor of its personnel policies. *See Kephart* at p. 1222. Notwithstanding, determining whether Palucki met Sears' legitimate expectations cannot be considered to have been a borderline issue in this case. The evidence is overwhelming that Palucki's job performance was not meeting Sears' legitimate expectations. And the whole of the evidence presented makes dramatically certain that, aside from Palucki's own beliefs, there is no support whatsoever for the contention that his age played a role in his dismissal. The record shows what Sears' expectations were, that Sears effectively communicated its expectations to Palucki, and that those expectations were reasonable. Palucki has produced no evidence whatsoever to create even a reasonable inference that his workload was excessive nor that despite his being switched to a "new" position Sears' demands were unduly burdensome. Id. There is absolutely no proof that there might have been in fact some viable nexus between plaintiff's age and his firing. Palucki's case must fail. *See Dorsch v. L.B. Foster Co.,* 782 F.2d 1421, 1423 (7th Cir. 1986). Sears' has more than satisfied the burden of establishing a legitimate, nondiscriminatory reason for its action; at the same time Palucki's assertions that Sears' reasons were pretextual are left as groundless assertions.

Palucki's total reliance upon his own general perceptions as to whether in fact he was doing his job are of little if any probative value. *Dale v. Chicago Tribune Company,* 797 F.2d 458, 464 (7th Cir.1986). And the testimony of fellow Sears' employees that they "felt" that Sears had some sort of master plan to discharge older employees, in the absence of statistical or anecdotal evidence supporting it, reads as unusable as conjecture and in addition fails to connect to Palucki as one illustrative case. Even if we were to give credence to the beliefs of these co-employees, like opinions their beliefs still stand as unusable because they fail to corroborate some fact. For example, there is no admissible evidence showing that plaintiff was targeted for discharge because of age to which these opinions could attach as corroboration.

Palucki argues that Sears should not have placed him in the consolidated unit, and did so hoping that he would be unable to manage the unit. This is like star gazing. It asks the court to speculate as to whether or not Sears placed the plaintiff in this position because he had had considerable experience or whether it placed him in that unit just because of his age—just to make it appear when later he would be fired that he was being fired for incompetence rather than because of his age. Contrary assessments of Palucki's performance by both himself and others do not impeach the legitimacy of Sears' expectations. *Kephart* at 1224.

On the substantial file before me I am forced to conclude that plaintiff's offerings as evidence in support of his claim, both directly and indirectly, fail to demonstrate that age was even a factor, to say nothing of its being a motivating factor, in Sears' decision to terminate Palucki; and failed to demonstrate that Sears' reasons should not be deemed to have been legitimate. Defendant's motion for summary judgment is granted.